**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **CHRISTENSON TRANSPORTATION, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **PROGRESSIVE TRANSPORTATION, LLC,** | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Christenson Transportation, Inc. ("Plaintiff" or "CTI") brings this action against Progressive Transportation, LLC ("Defendant" or "PTL") alleges as follows:

## NATURE OF THE ACTION

1.  Plaintiff brings this action arising out of Defendant PTL's breach of an Assignment of Revenue and Carrier Service Agreement between Plaintiff and PTL dated February 25, 2017 (the "Agreement") and the Amendment to Agreement (the "Amendment"), attached hereto as **Exhibit 1**.

## JURISDICTION AND VENUE

2.  This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because, as noted below, complete diversity of citizenship exists between Plaintiff, on the one hand, and Defendant, on the other hand, and because the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

3.  Defendant is subject to personal jurisdiction in the State of Texas, and venue in this action is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the

events or omissions giving rise to this claim occurred in this District and Defendant is subject the

Court's personal jurisdiction with respect this action.

4.      Jurisdiction and venue are also appropriate before this Court because the parties

consented to such in the Agreement.

## PARTIES

5.      CTI is a Missouri corporation with its principal place of business at 2301 W. Old

Route 66 Highway, Strafford, Missouri 65757.  CTI is an interstate motor carrier operating under

issued by the United States Department of Transportation.

6.      Defendant PTL is a Delaware limited liability company with its principal place of

business at 4500 Salisbury Road, Jacksonville, Florida 32216. Defendant can be served through

its registered agent Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas

78701.

7.      PTL is a wholly-owned subsidiary of Sunteck Transport Co., LLC a/k/a

SunteckTTS ("Sunteck"), a Florida limited liability company. The sole member of Sunteck is

Mode Transportation, LLC, a Delaware limited liability company. Upon information and belief,

none of Mode's members are citizens of Missouri.

8.      At all times relevant to the allegations herein, Sunteck and its representatives acted

as agents of PTL.

9.      At all relevant times, PTL was an interstate motor carrier.  In addition to its motor

carrier operations, PTL offers various logistic services, operation support services, and products

to other motor carriers, including billing, collection, dispatching, and insurance.  PTL contracted

with CTI under the terms of the Agreement and the Amendment to provide these services.

## FACTUAL BACKGROUND COMMON TO ALL COUNTS

10.     On or about February 25, 2017, CTI and PTL entered into the Agreement whereby CTI assigned to PTL all of its transportation revenue, including CTI's right to collect all such revenue and its right to take all lawful action necessary to collect such revenue.

11.     In exchange for CTI's assignment of revenue, PTL agreed to collect such revenue and to remit such revenue to CTI, less a fee for services rendered by PTL.

12.     Pursuant to the Agreement and the Amendment, PTL agreed to pay CTI (i) ninety percent (90%) of linehaul revenue, plus one hundred percent (100%) of net accessorial charges and fuel surcharges, (ii) ninety-five percent (95%) of the gross billing for "Operating Accounts" as defined in the Amendment, (iii) ninety-five percent (95%) of the gross billing for certain Dell Cross Outbound shipments and one hundred percent (100%) for certain Dell Cross Inbound shipments, and (iv) two percent (2%) of linehaul revenue for loads handled for TTS, LLC.

13.     In exchange for the service fee noted above, PTL was required to provide certain services to CTI, including, but not limited to, invoicing CTI's customers, collecting accounts receivable, and providing other accounting services to CTI.

14.     Under the Agreement, and in exchange for the service fee discussed above, PTL was also obligated to obtain auto liability insurance and excess liability insurance for CTI. However, in the Amendment, the parties agreed that CTI retained the right to opt out of PTL's auto liability and excess liability insurance provided that the insurance procured by CTI satisfied PTL's minimum insurance requirements of one million dollars ($1,000,000.00) for auto liability insurance and four million dollars ($4,000,000.00) for excess liability insurance.

15.     In the event that CTI opted out of PTL's insurance, the Amendment provides that "PTL will reimburse [CTI] for its (PTL's) direct costs for any such policies" plus "an additional fifty percent (50%) of PTL's costs for the excess liability coverage."

16.     CTI agreed to provide PTL sufficient notice of any decision to opt out of PTL's insurance in order to accommodate CTI's removal from PTL's coverage.

17.     The Agreement required that CTI pay all of its operation expenses, such as: repair and maintenance of equipment; fuel; fuel and mileage taxes; oil; grease; road and other tolls; empty mileage; detention and assessorial services; expenses of drivers, helpers, and other employees of CTI; the cost of workman's compensation insurance; health, welfare, and pension costs; and taxes of any kind assessed against CTI.

18.     In the event that PTL paid any expenses of CTI, the Agreement states as follows: "If any of [CTI's] expenses are initially paid by PTL the amounts so paid shall be deducted from [CTI's] settlements."

19.     The Agreement further provides that "[n]o modification of this Agreement will be effective unless in writing and signed by both parties."

20.     During the term of the Agreement, PTL deducted unauthorized expenses from CTI's settlements, including expenses of other motor carriers who were subject to their own Assignment of Revenue and Carrier Service Agreement with PTL.

21.     For instance, PTL deducted financial obligations of ICS Transportation Services, LLC ("ICS") for base plates from CTI's settlements.

22.     These were financial obligations and expenses of ICS, not CTI, and PTL was not authorized to deduct ICS's financial obligations from CTI's settlements.

23.     By deducting another motor carrier's financial obligations and expenses from CTI's settlements, PTL breached the Agreement with CTI.

24.     By letter dated August 26, 2019, PTL, through its agent, Sunteck, elected not to renew the Agreement and informed CTI that the Agreement shall be terminated effective February 24, 2020.

25.     Upon being informed of the termination of the Agreement, CTI immediately began searching for auto liability insurance and excess liability insurance to replace the coverage provided by PTL, and CTI informed PTL that it was searching for such replacement coverage.

26.     PTL, through representatives of its agent, Sunteck, assisted CTI in procuring replacement coverage.

27.     By January 20, 2020, CTI informed PTL, through its agent, Sunteck, that it had secured its own auto liability insurance and excess liability insurance and that such policies would be effective February 1, 2020, thereby exercising its option to opt out of PTL's coverage for the remaining period of the Agreement.

28.     CTI's notice to PTL provided PTL more than sufficient time in order for PTL to remove CTI from its coverage.

29.     Despite the terms of the Amendment and having received adequate notice to accommodate CTI's removal from PTL's coverage, PTL deducted the cost of auto liability insurance and excess liability insurance for the month of February 2020 from CTI's settlements.

30.     In refusing to accept CTI's exercise of the opt-out provision in the Agreement and the Amendment, PTL breached the Agreement and the Amendment with CTI.

31.     In September 2020, CTI presented its claims to PTI that it breached the Agreement and the Amendment.  More than thirty (30) days has passed since CTI presented its claims to PTL, and PTL has not tendered payment to CTI.

## COUNT I
## BREACH OF CONTRACT

32.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 31 set forth herein.

33.     Defendant PTL entered into the Agreement with CTI whereby CTI agreed to assign to PTL all of CTI's transportation revenue and PTL agreed to provide certain services to CTI and further agreed to remit such revenue to CTI, less a service fee and expenses of CTI paid by PTL on behalf of CTI.

34.     Among other things, the Agreement and the Amendment provided that PTL would provide auto liability insurance and excess liability insurance for CTI, but that CTI retained the option to procure its own auto liability insurance and excess liability insurance in which instance PTL agreed to reimburse CTI for the cost of such policies.

35.     PTL breached the Agreement by deducting unauthorized expenses from CTI's settlements and by failing to reimburse CTI for the costs of auto liability insurance and excess liability insurance procured through its rightful option to opt out of insurance provided by PTL.

36.     As a result of PTL's breaches of the Agreement and the Amendment, CTI has been damaged in amount in excess of seventy-five thousand dollars ($75,000.00).

## COUNT II
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

37.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 36 set forth herein.

38.     In assigning to Defendant all of CTI's transportation revenue, including CTI's right to collect all such revenue and its right to take all lawful action necessary to collect such revenue, on the premise and understanding that Defendant would then remit to Plaintiff any revenues collected pursuant to such assignment (net of certain permissible expenses), Plaintiff and Defendant established a relationship marked by shared trust.

39.     Defendant's failure and refusal to remit to Plaintiff all revenues collected (net of certain permissible expenses) pursuant to such assignment of rights constitutes a breach of the common law duty of good faith and fair dealing.

40.     Defendant's collection and refusal to remit moneys rightfully belonging to Plaintiff would give rise to liability under Texas law even in the absence of the Agreement or the Amendment.

41.     Plaintiff is entitled to a judgment in equity requiring that Defendant PTL disgorge all money wrongfully withheld from Plaintiff and pay those sums to Plaintiff.

## COUNT III
## QUANTUM MERUIT AND UNJUST ENRICHMENT/RESTITUTION

42.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 41 set forth herein.

43.     Plaintiff assigned to Defendant all of CTI's transportation revenue, including CTI's right to collect all such revenue and its right to take all lawful action necessary to collect such revenue.

44.     In exchange for Plaintiff's assignment of revenue, Defendant agreed to collect such revenue and to remit such revenue to Plaintiff, less a fee for services rendered by Defendant.

45.     Defendant collected moneys on behalf of Plaintiff and has refused to remit such moneys to Plaintiff.

46.     Defendant PTL has been unjustly enriched by failing to remit money rightfully due to Plaintiff.

47.     Plaintiff is entitled to a judgment in equity for restitution requiring that Defendant PTL disgorge all money wrongfully withheld from Plaintiff and pay those sums to Plaintiff.

## COUNT IV
## ATTORNEYS' FEES

48.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 47 set forth herein.

49.     As a result of Defendant's breach of contract as set forth herein, Plaintiff is entitled to recover its reasonable attorneys' fees and costs from Defendant, pursuant to Tex. Civ. Prac. & Rem. Code § 38.001.

50.     Plaintiff has presented to Defendant or a duly authorized agent of Defendant a claim for the just amount owed under the parties' written contract, and payment of such claim was not tendered before the expiration of the 30th day after the claim was presented.

51.     Defendant has met the procedural requirements to be entitled to recover its attorneys' fees and costs pursuant to Tex. Civ. Prac. & Rem. Code § 38.002.

## PRAYER

WHEREFORE, Plaintiff CTI prays that the Court enter judgment in its favor and against Defendant PTL, that it be awarded damages as a result of the conduct alleged herein, that it be awarded its attorneys' fees and costs, and for such other and further relief as it may show itself to be justly entitled.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Theanna Bezney*
Theanna Bezney
Texas Bar No. 24089243
FISHER & PHILLIPS LLP
500 N. Akard Street, Suite 3550
Dallas, TX  75201
Tel: (214) 220-9100
Fax: (214) 220-9122
*tbezney@fisherphillips.com*

James C. Sullivan
Missouri Bar No. 38318
(*pro hac vice application to be submitted*)
FISHER & PHILLIPS, LLP
4900 Main Street, Suite 650
Kansas City, MO  64112
Tel: (816) 842-8770
Fax: (816) 842-8767
*jsullivan@fisherphillips.com*

**ATTORNEYS FOR PLAINTIFF**
**CHRISTENSON TRANSPORTATION, INC.**